IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SHAUN COWLEY,<br><br>Plaintiff,<br><br>vs.<br><br>WEST VALLEY CITY, WVC MANAGER WAYNE PYLE, FORMER POLICE CHIEF BUZZ NIELSEN, CURRENT POLICE CHIEF LEE RUSSO, WVC DETECTIVE DAVID GRECO, DEPUTY CHIEF PHILIP QUINLAN, DEPUTY CHIEF MICHAEL POWELL, LIEUTENANT JOHN COYLE, FORMER CHIEF ANITA SCHWEMMER,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING WEST VALLEY CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Case No: 2:16-cv-00143<br><br>Judge Bruce S. Jenkins |

Defendants West Valley City (the "City"), Wayne Pyle ("Pyle"), Buzz Nielsen ("Nielsen"), Lee Russo ("Russo"), David Greco ("Greco"), Philip Quinlan ("Quinlan"), Michael Powell ("Powell"), John Coyle ("Coyle"), and Anita Schwemmer ("Schwemmer") (collectively "Defendants")[1] move the Court for partial summary judgment on the following claims brought by Plaintiff Shaun Cowley ("Plaintiff"): (1) each of Plaintiff's three remaining claims against the Individual Defendants in their official capacity; (2) Plaintiff's Second Cause of Action under 42 U.S.C. § 1983 for violation of Plaintiff's right to procedural due process; and (3) Plaintiff's Fifth Cause of Action under 42 U.S.C. § 1983 for retaliatory prosecution.[2] After considering the

---

[1] The individual defendants (Pyle, Nielsen, Russo, Greco, Quinlan, Powell, Coyle, and Schwemmer) are collectively referred to as the "Individual Defendants."

[2] Defendants do not seek summary judgment on Plaintiff's First Cause of Action under 42 U.S.C. § 1983 against the Coyle in his individual capacity and the City.

parties' briefing and oral argument, the Court GRANTS Defendants' Motion for Partial Summary Judgment.

As a preliminary matter, in his memorandum opposing summary judgment, Plaintiff agreed to limit his Second and Fifth Causes of action as follows:

First, Plaintiff consented that summary judgment should be granted in favor of Defendants Nielsen, Russo, Greco, Quinlan, Powell, Coyle, and Schwemmer as to Plaintiff's Second Cause of Action under 42 U.S.C. § 1983 for violation of Plaintiff's right to procedural due process.

Second, Plaintiff consented that summary judgment should be granted in favor of Defendants Nielsen, Schwemmer, Russo, and Quinlan on Plaintiff's Fifth Cause of Action under 42 U.S.C. § 1983 for retaliatory prosecution.

Third, Plaintiff limited his procedural due process claim to the City and Pyle, and agreed that the sole basis for this claim is that "Pyle, as City Manager for WVC, determined prior to [Plaintiff's] pre-termination hearing that [Plaintiff] would be terminated and enforced his decision by ordering [acting Police] Chief Marx to alter his recommendation on Plaintiff's discipline." As a result, Plaintiff consented that summary judgment should be granted in favor of the City and Pyle as to all other grounds on which this claim was originally brought.

Fourth, Plaintiff limited his retaliatory prosecution to the City and Greco, and agreed that the sole basis for this claim is that the City and Greco "induced the Salt Lake County District Attorney's Office to file criminal charges against [Plaintiff] by offering its own detective, David Greco, to sign the Information . . . even though Greco did not believe there was probable cause

for the prosecution." As a result, Plaintiff consented that summary judgment should be granted in favor of the City and Greco as to all other grounds on which this claim was originally brought.

Because Plaintiff narrowed his Second and Fifth Causes of Action, Nielsen, Russo, Quinlan, Powell, and Schwemmer are dismissed from this case as Plaintiff has no remaining claims against them.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), courts grant summary judgment if the movant shows no genuine dispute as to any material fact exists, and "the movant is entitled to judgment as a matter of law." "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit. A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1215 (10th Cir. 2013) (quoting *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000)). In evaluating a motion for summary judgment, the Court reviews "the facts in the light most favorable to the nonmovant and draw[s] all reasonable inferences in the nonmovant's favor." *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015).

"The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248. Moreover, an issue of fact is genuine only if "a reasonable jury could return a verdict for the non-movant." *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996) (citation omitted). If there is

no genuine issue of material fact in dispute, the Court grants summary judgment according to the substantive law. *See id.* at 990.

A party seeking summary judgment always has the initial burden of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believe demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Furthermore, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* at 324. In such instances, the moving party has no obligation to present extrinsic evidence or supporting affidavits to sustain its assertion that no genuine disputes of material fact exist. *Id.*

Once a moving party satisfies its initial summary judgment burden by pointing to a lack of evidence in the record, the burden of production shifts to a non-moving party to come forward with admissible evidence to demonstrate the existence of a genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 330 (Brennan, J, dissenting) (the burden of production shifts to the non-moving party once the moving party "demonstrate[s] to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim"); *1-800 Contacts, Inc. v. Lens.com, Inc.*, 722 F.3d 1229, 1242 (10th Cir. 2013) ("Once the moving party has [met its initial burden], the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial.") (citation omitted). The non-moving party "may not rely on mere allegations, or denials, contained in its

pleadings or briefs" to defeat summary judgment. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 982 (10th Cir. 2002). And when a jury would be required to speculate to find in favor of the non-moving party, summary judgment is appropriate. *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings. . . . To defeat a motion for summary judgment, evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise.") (citations omitted). *Cf. Sunward Corp. v. Dun & Bradstreet, Inc.*, 811 F.2d 511, 521 (10th Cir. 1987) (reversing jury verdict where essential elements of plaintiff's claim were "supported only by speculation and conjecture" rather than admissible evidence).

## FACTUAL BACKGROUND

Examining the evidence in a light most favorable to Plaintiff, the following facts guide the Court's decision.

### Procedural Due Process

On November 2, 2012, two City police officers, Plaintiff and Officer Kevin Salmon (Salmon) were involved in the shooting of Danielle Willard (Willard), which resulted in Willard's death. (West Valley City Defs.' Mot. For Summ. J. (Mot.), Statement of Elements and Undisputed Material Facts (Facts) ¶ 63, ECF No. 86.) Immediately following the shooting, protocol was invoked to create a joint investigation between the City and the Salt Lake County District Attorney's Office (DA's Office). (Id. ¶ 64.) As part of the investigation, investigators inspected Plaintiff's vehicle and discovered unbooked evidence. (Pl.'s Opp'n to Defs.' Mot for Partial Summ. J. (Opp'n), Pl.'s Statement of Facts (Pl.'s Facts) ¶ 10, ECF No. 104.) As a result, the City opened an Internal Affairs (IA) investigation into the unbooked evidence in Plaintiff's

vehicle. (Id. ¶ 11.) On March 4, 2013, the City had a follow-up interview with Plaintiff where

Plaintiff disclosed systematic misconduct within the Neighborhood Narcotics Unit (NNU).[3] (Id.

¶¶ 13-14.)

On or about March 26, 2013, Plaintiff was provided with notice of a meeting with

Quinlan to discuss a pending IA investigation into Plaintiff's conduct. (Id. ¶ 26; Facts ¶ 1.) On

April 4, 2013, Plaintiff and his counsel met with Quinlan and were given an explanation of the

City's evidence, and an opportunity to present Plaintiff's side of the story. (Facts ¶ 2.)

On August 15, 2013, the City's Command Group, which included City Manager Pyle,

decided that for Plaintiff's discipline "anything less than termination sends the wrong message to

the department and the citizens." (Pl.'s Facts ¶ 33.) On August 19, 2013, Plaintiff was provided

notice of a predisciplinary meeting with Larry Marx (Marx), who was given the chief's role for

discipline in Plaintiff's case.[4] (Id. ¶ 32; Facts ¶¶ 3, 36.) The notice set forth the City's evidence

and Plaintiff's potential policy violations. (Id. ¶ 3.) On August 30, 2013, Plaintiff and his

counsel met with Marx and Plaintiff was allowed to explain his side of the story. (Id. ¶ 4; Pl.'s

Facts ¶ 34.) Subsequently, Marx provided Pyle with drafts of two disciplinary letters, both of

which sustained the charges against Plaintiff, as follows: one letter provided for 240 hours of

administrative leave and the other letter provided for termination of Plaintiff's employment.

---

[3] Defendants dispute Plaintiff's assertion that there was systematic conduct, but do not dispute
that Plaintiff believed there was. (Defs.' Reply to Mot for Partial Summ. J. (Reply), Response to
Pl's Statement of Fact (Resp. to Pl.'s Facts) ¶ 14, ECF No. 109.) The truth or falsity of
Plaintiff's misconduct allegations is not material to the Court's decision.

[4] For the majority of Plaintiff's termination process, Schwemmer was the acting police chief,
however, she was recused from all disciplinary matters involving officers in the Plaintiff's unit
as she had previously supervised the unit. (Facts ¶¶ 35-36.)

(Facts ¶ 37; Opp'n, Response to Defs.' Statement of Facts (Resp. to Facts) ¶ 37; Pl.'s Facts ¶ 35.)

In both of these letters, Marx sustained the following policy violations by Plaintiff:

(1) 804.3 Property Handling;

(2) 804.3.1 Property Booking Procedure;

(3) 804.2.2 Packaging Narcotics;

(4) 340.3.5 Performance;

(5) 900.7 Handling of Prisoner's Property; and

(6) 340.3.5(e) Insubordination

(Disciplinary Letter, ECF No. 86-6; Draft Disciplinary Letter, ECF No. 109-4.) Moreover, in both of the disciplinary letters provided by Marx to Pyle, Marx included language stating, "I find your conduct completely unacceptable. You have brought dishonor to the Police Department and the City which has undermined the public's trust of the Police Department." (Disciplinary Letter, ECF No. 86-6, at 7; Draft Disciplinary Letter, ECF No. 109-4, at 7.) Marx felt that administrative leave was the appropriate level of discipline, however, city administration, including Pyle, elected to terminate Plaintiff's employment. (Facts ¶¶ 37-38; Resp. to Facts ¶ 37.)[5]

Plaintiff was given *two* pre-termination hearings where he was given an opportunity "to present his side of the story." (Facts ¶¶ 1-4.) These were the April 4, 2013 hearing with Quinlan, and the August 30, 2013 hearing with Marx. (Id.) The copies of the transcripts of these

---

[5] Significantly, Plaintiff admits that Pyle, as the City's chief executive officer, had authority to terminate employees, but Plaintiff maintained that Pyle's exercise of this authority was somehow wrongful and deprived Plaintiff of pre-termination procedural due process. *See* Opp'n at 34, 36. In addition, the termination letter issued to Plaintiff expressly stated, "With the concurrence of City Manager, Wayne Pyle, I am terminating your employment effective immediately." (Disciplinary Letter, ECF No. 86-6, at 7.)

two hearings (which Plaintiff submitted in his opposition to Defendants' summary judgment motion) are 40 and 74 pages in length, respectively, and they also show that Plaintiff was represented by an attorney at each of these hearings. (ECF Nos. 104-9, 104-11.)

On or about September 12, 2013, Plaintiff was informed that his employment was being terminated and that he had the right to appeal his termination. (Facts ¶ 5; Pl.'s Facts ¶ 37.) Plaintiff appealed his termination to the CSC, which was later replaced by Administrative Law Judge Melinda Hibbert. (Facts ¶ 6.) In June 2015, Plaintiff prevailed on his post termination appeal by means of an order by Administrative Law Judge Hibbert wherein Plaintiff's termination appeal was dismissed and Plaintiff was reinstated as a police officer with the City. (Id. ¶ 7.) Subsequently, after negotiations between the parties, the City and Plaintiff stipulated to a final judgment pursuant to Utah Code Ann. § 10-3-1106(5)(b) dated June 8, 2015, whereby Plaintiff received $88,190.54 in lost salary[6] and a contribution of $32,832.82 to his retirement account, and Plaintiff voluntarily resigned his employment with the City. (Id. ¶ 8.) Plaintiff never appealed the result of his termination appeal process to the courts. (Id. ¶ 14.)

**Retaliatory Prosecution**

On March 27-28, 2013, the investigators from the City presented the facts and evidence of the Willard Shooting to the DA's Office. (Id. ¶ 67.) In addition to the two-day presentation of evidence, the joint investigation team compiled a case report containing the entire evidence, which was provided to a separate prosecution team at the DA's Office. (Id. ¶ 69.) Following this presentation of evidence to the DA's Office, it was the DA's Office's responsibility to

---

[6] The actual lost salary amount was $127,254.54, but it was offset by Plaintiff's other earnings during the relevant time period of $39,064.00. The lost salary award included $14,513.48 in lost personal time off; $7,748.47 for lost holiday pay; $3,027.31 for lost overtime pay.

determine whether the shooting was justified or unjustified. (Id. ¶ 71.) On August 8, 2013, the

DA's Office made the decision that the shooting was unjustified, and provided its conclusions to

the City in a detailed 40-page letter. (Id. ¶ 73; Unjustified Shooting Letter, ECF No. 86-29.)

When asked about the decision to file charges against Plaintiff, several witnesses from

the DA's Office unequivocally asserted that it was the DA's Office's decision. (*See* Watrous

Deposition, ECF No. 86-25, at 60:4-6; Knighton Deposition, ECF No. 86-28, at 47:6-48:5;

Nakamura Deposition, ECF No. 86-27, at 76:1-3.) Blake Nakamura (Nakamura), the lead

prosecutor on Plaintiff's criminal case also testified that under law and applicable ethical rules,

the DA's Office only brings charges when they believe charges are warranted. (Nakamura

Deposition, ECF No. 86-27, at 75:7-21.)

Subsequently, the DA's Office drafted the probable cause statement without any input

from the City. (Facts ¶ 81; Resp. to Facts ¶ 81.) On June 17, 2014, Blake Nakamura

(Nakamura), the lead prosecutor on Plaintiff's criminal case, emailed Mike Christenson

(Christenson), the Sergeant over Investigations at the police department to have either Chris

Dowland or Greco sign the Information. (Facts ¶¶ 82-83). Subsequently, Greco was identified

as the declarant for the Information and signed the Information, even though Greco did not

believe there was probable cause for the criminal charge.[7] (Id. ¶ 84; Resp. to Facts ¶ 84; Pl.'s

Facts ¶ 60.) The DA's Office could have had other individuals, including Detective Chris

Kotrodimos (Kotrodimos) from the Salt Lake County Police Department, sign the Information.

(Facts ¶ 86.) Nakamura, as the lead prosecutor, also signed the Information, indicating that it

---

[7] Defendants dispute Plaintiff's characterization that Greco did not believe there was probable cause for the criminal charges as being a legal conclusion. (Resp. to Pl.'s Facts ¶ 45.) Defendants' response is well-taken, however, such a distinction is not material to the Court's decision.

was authorized for presentment and filing. (Id. ¶ 88.) On June 19, 2014, the DA's Office

charged Plaintiff with a Count of Felony II Manslaughter. (Id. ¶ 75; Pl.'s Facts ¶ 65.) Only the

DA's Office had the ability to file charges against Plaintiff (Resp. to Facts ¶ 76.)

On October 6-8, 2014, Judge Dever held a three-day preliminary hearing to determine

whether there was probable cause for the Manslaughter charge. (Pl.'s Facts ¶ 68.)

At the preliminary hearing, David Greco testified that Shaun was in a pinch point when he

discharged his weapon, and upon that basis, Judge Dever dismissed the case for lack of probable

cause. (Id. ¶ 69.)

## DISCUSSION

### I. SUMMARY JUDGMENT IS WARRANTED ON ALL CLAIMS BROUGHT AGAINST THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITY.

Plaintiff purported to bring all of his claims against the Individual Defendants in both

their "personal and official capacities." *See* Amended Complaint at ¶¶ 7-14. Defendants argued

that all of Plaintiff's claims should be dismissed against the Individual Defendants in their

official capacities because "state officials 'acting in their official capacities' are outside the class

of 'persons' subject to liability under . . . 42 U.S.C. §1983." *See, e.g., Hafer v. Melo*, 502 U.S.

21, 22-23 (1991); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly,

based on Plaintiff's acquiescence and the controlling law, summary judgment is granted on each

of Plaintiff's claims against the Individual Defendants in their official capacities.

### II. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S SECOND CAUSE OF ACTION FOR VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS.

The Court grants summary judgment in favor of the City and Pyle under 42 U.S.C. §

1983 for violation of Plaintiff's right to procedural due process, based on the following independent grounds.

### A. Plaintiff Prevailed on His Post-Termination Appeal.

Following the alleged deprivation of Plaintiff's procedural due process preceding his termination, Plaintiff exercised his appeal rights and ultimately prevailed during his post-termination process. As a result, Plaintiff was reinstated, and then resigned his employment with the City after negotiating the City's a payment to him of $88,190.54 in lost salary, including $14,513.48 in lost personal time off; $7,748.47 for lost holiday pay; and $3,027.31 for lost overtime pay, as well as a contribution of $32,832.82 to Plaintiff's retirement account. This was a stipulated amount designed to make Plaintiff whole for the termination of his employment. Although the parties included boilerplate language that they did not waive any rights, this did not give Plaintiff grounds to renegotiate the settlement of his termination appeal by seeking additional benefits. *See Happy Camper Management, LLC v. Ament*, 2016 WL 8259516, at *5 (D.N.M. Sept. 27, 2016) ("[N]or can the Court go back in time and rewrite the settlement terms to include language that was not considered and agreed to by the parties."). Plaintiff has not cited any cases (and the Court is not aware of any) where a Plaintiff prevailed on his termination appeal, stipulated to an amount, and then still was able to recover additional damages for the alleged violation of his procedural due process rights based on the same events. Additionally, Plaintiff's allegations before this Court regarding his deprivation of procedural process due process are the same allegations that justified his appeal of his termination.

### B. Plaintiff Has Not Been Deprived of His Procedural Due Process Rights.

Given the manner in which Plaintiff narrowed his claim in response to Defendants'

summary judgment motion, he has limited his procedural due process claim to a claim that he was deprived of appropriate pre-termination due process based on Pyle's participation in the termination decision. Regardless of who terminated Plaintiff, however, the undisputed facts establish that Plaintiff was not deprived of his procedural due process rights.

The three essential elements of pre-termination process are "(1) 'oral or written notice [to the employee] of the charges against him;' (2) 'an explanation of the employer's evidence and [3] an opportunity [for the employee] to present his side of the story.'" *Montgomery v. City of Ardmore*, 365 F.3d 926, 936 (10th Cir. 2004).

Prior to being terminated Plaintiff was given *two* pre-termination hearings where he was given an opportunity "to present his side of the story." *Montgomery v. City of Ardmore*, 365 F.3d at 936. The transcripts of these hearings which are 40 and 74 pages in length, respectively, and show that Plaintiff was represented by an attorney at both hearings. *See* Hearing Transcripts (ECF Nos. 104-9, 104-11). Plaintiff did not argue that these hearings were inadequate and the Court finds from the undisputed facts that they were adequate. This is all that was required of procedural due process in this case.

Plaintiff's sole complaint is that Pyle ordered Marx to terminate Plaintiff's employment despite that Marx felt that administrative leave was the appropriate action. Significantly, there is no dispute that Marx adjudicated the facts of Plaintiff's IA and determined that Plaintiff's serious policy violations occurred and that they warranted discipline.[8] *See* Notice of Disciplinary

---

[8] Marx sustained the following serious policy violations:

    (1) 804.3 Property Handling;
    (2) 804.3.1 Property Booking Procedure;
    (3) 804.2.2 Packaging Narcotics;

Decision (ECF No. 86-6) at 7. In both of the disciplinary letters provided by Marx to Pyle, Marx included language stating, "I find your conduct completely unacceptable. You have brought dishonor to the Police Department and the City which has undermined the public's trust of the Police Department." *See id.*; Draft Disciplinary Letter (ECF No. 109-4) at 7. Plaintiff also admits that Pyle had authority to terminate as the chief executive officer of the City. Opp'n at 34, 36; *see also* Utah Code Ann. § 10-3-1224 (2007) (describing the City Manager as the "chief executive officer of the municipality."). Plaintiff has not cited any authority, and the Court is not aware of any, that precludes a City Manager, as the City's chief executive officer, from providing input into a disciplinary decision that affects his city.[9]

The Court is also persuaded by *Qualls v. City of Piedmont*, 2016 WL 6078356, at *4–6 (W.D. Okla. 2016) (unpublished), which considered a factually analogous case to this one. In *Qualls*, the plaintiff "received before termination all of the procedural protections that the Due Process Clause requires, namely, notice of the recommended decision and an opportunity to respond and present his side of the story. He was represented by counsel, and permitted to fully explain his actions." *Id.* at *5. In the words of the district court, the plaintiff's "only criticism of the pre-termination hearing is that it lacked a neutral decision maker. Plaintiff argues that the

---

    (4) 340.3.5 Performance;
    (5) 900.7 Handling of Prisoner's Property; and
    (6) 340.3.5(e) Insubordination
*See* Notice of Disciplinary Decision (ECF No. 86-6).

[9] Plaintiff cites *Lucas v. Murray City Civ. Serv. Comm'n*, 949 P.2d 746 (Utah Ct. App. 1997) and *Kelly v. Salt Lake Civil Serv. Comm'n*, 8 P.3d 1048, 1054 (Utah Ct. App. 2000) regarding discretion given to the police chief to administer discipline. *See* Opp'n at 34. However, neither of these cases requires the Chief to be the only one to participate in the disciplinary process, and neither establishes that involvement of city administration constitutes a constitutional violation. *See generally Lucas*, 949 P.2d 746; *Kelly*, 8 P.3d 1048.

'hearing officer' . . . had already prejudged his case." *Id.* In responding to this argument, the court stated that "Plaintiff presents no legal authority, however, for the proposition that a pre-termination hearing must be conducted by a neutral person with no prior involvement in the case. In fact, this argument is contrary to Tenth Circuit case law . . . and, therefore, is rejected by the Court." *Id.*[10]

Accordingly, it was not a deprivation of due process for Pyle to allegedly determine that Plaintiff's policy violations warranted termination of Plaintiff's employment with the City. As Plaintiff received all the due process to which he was entitled, summary judgment is warranted on Plaintiff's procedural due process claim.

### III. SUMMARY JUDGMENT IS WARRANTED ON PLAINTIFF'S FIFTH CAUSE OF ACTION FOR RETALIATORY PROSECUTION.

A retaliatory prosecution claim requires Plaintiff to "plead and prove (1) that [he] was engaged in a constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that a defendant's action was substantially motivated as a response to [Plaintiff's] exercise of [his] First Amendment speech rights." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).[11] Because Defendants were not the prosecuting entity, Plaintiff has the additional burden to "show that the nonprosecuting official acted in retaliation, and must also show that he induced the prosecutor to bring charges *that would not have been initiated without his urging*." *Hartman v. Moore*, 547 U.S. 250, 262 (2006) (emphasis added).

---

[10] Unlike *Qualls*, there is no dispute in the present case that Marx, who conducted Plaintiff's pre-termination hearing, was a neutral adjudicator of the facts.
[11] Plaintiff must also prove the absence of probable cause. However, Defendants concede that there are at least factual disputes as to this element.

As an initial matter, the Court addresses Plaintiff's assertion that he can establish a

retaliatory prosecution claim by "participation." There is no such thing as a claim of

"participation" under a retaliatory prosecution claim. The case that Plaintiff cites to support the

existence and elements of "participation" is *Pierce v. Gilchrist*, 359 F.3d 1279 (10th Cir. 2004).

Opp'n at 37, 41. However, the claim in *Pierce* is not "participation," but *malicious prosecution*.

359 F.3d at 1291. Similarly, Plaintiff's reliance on *Wolford v. Lasater*, 78 F.3d 484 (10th Cir.

1996), is misplaced as that case also is for a claim for *malicious prosecution*, not retaliatory

prosecution. *See* Opp'n at 40; *Wolford*, 78 F.3d at 489.

Retaliatory prosecution and malicious prosecution are distinct and separate legal theories

of liability. As established by *Pierce*, the tort of malicious prosecution tort has five elements: (1)

initiating (or participating in) the action; (2) termination of the action in favor of the plaintiff; (3)

no probable cause; (4) malice; and (5) damages. 359 F.3d at 1286, 1291-97. In contrast, the

elements of a claim for retaliatory prosecution are "(1) that [he] was engaged in a

constitutionally protected activity; (2) that a defendant's action caused [him] to suffer an injury

that would chill a person of ordinary firmness from continuing to engage in that activity; and (3)

that a defendant's action was substantially motivated as a response to [his] exercise of [his] First

Amendment speech rights." *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).[12]

Plaintiff does not have a claim for malicious prosecution in this case. Plaintiff expressly

filed the amended complaint alleging a "42 U.S.C. Violation due to *Retaliatory Prosecution* to

Deter Cowley's First Amendment Rights." Am. Compl. (ECF No. 22) at 19 (emphasis added).

---

[12] Additionally, where Defendants did not actually bring the charges, Plaintiff "must show that
the nonprosecuting official acted in retaliation, and must also show that he induced the
prosecutor to bring charges that would not have been initiated without his urging." *Hartman v.
Moore*, 547 U.S. 250, 262 (2006).

Plaintiff previously had asserted a malicious prosecution claim in his original complaint, but expressly dropped it when he amended his Complaint. Allowing Plaintiff to pursue a malicious prosecution claim to attempt to defeat Defendants' summary judgment motion would be unjust and prejudicial to Defendants, and inconsistent with Plaintiff's claims in his amended complaint. Accordingly, the Court will only analyze Plaintiff's retaliatory prosecution claim as pled.

The Court grants summary judgment in favor of the City and Pyle under 42 U.S.C. § 1983 for retaliatory prosecution, based on the following independent grounds.

### A. The DA's Office Determined that Charges Were Warranted.

The criminal justice system provides the government "broad discretion as to whom to prosecute." *Wayte v. U.S.*, 470 U.S. 598, 607 (1985). Furthermore, the "presumption that a prosecutor has legitimate grounds for the action he takes is one that we do not lightly discard, given our position that judicial intrusion into executive discretion of such high order should be minimal." *Hartman v. Moore*, 547 U.S. 250, 262 (2006). Accordingly, to overcome this "presumption of regularity," and hold a nonprosecuting official liable for the decisions of the prosecuting official, a plaintiff must "show that [the nonprosecuting official] induced the prosecutor to bring charges that would not have been initiated without his urging." *Hartman v. Moore*, 547 U.S. 250, 262 (2006).

Plaintiff has failed to raise any issues of fact as to this necessary link between Defendants and the DA's Office's decision to press charges. The record shows that the DA's Office was involved in the case from the beginning. Immediately following the shooting on November 2, 2012, protocol was invoked to create a joint investigation between the City and the DA's Office. The investigators completed their investigation and presented their findings to the DA's Office

16

on March 27-28, 2013, including a case report, containing the entire evidence, which was

provided to a separate prosecution team at the DA's Office. Months later, on August 8, 2013,

the DA's Office made the decision that the shooting was unjustified, and provided its

conclusions to the City in a detailed 40-page letter. This letter demonstrates that, at that point,

the DA's Office was concerned about what appeared to be an unjustified shooting. Plaintiff has

not asserted or provided any evidence that the City urged or induced the DA's Office to

determine that the shooting was not justified.[13] At this point, the DA's Office had the

responsibility to determine whether charges were warranted against Plaintiff.

    As discussed above, Plaintiff has narrowed his retaliatory prosecution claim to focus

solely on Greco's signing of the Information. The record is clear that the DA's Office drafted

the Information without any assistance from Greco or the City. Additionally, the record shows

that at the time that Greco was asked to sign the Information, the DA's Office had already

determined to file charges and had drafted the Information. On June 17, 2014, only two days

before filing charges against Plaintiff, Nakamura, the lead prosecutor on Plaintiff's criminal case,

emailed Christenson to have either Chris Dowland or Greco sign the Information. Greco

ultimately was chosen to sign the Information. There is no evidence in the record that he urged

or otherwise induced the DA's Office to file charges. This is further evidenced by Nakamura's

signature on the Information, indicating that it was authorized for presentment and filing. Only

the DA's Office had the ability to file charges against Plaintiff.

---

[13] Although not necessary to prove a retaliatory prosecution claim, the fact that the DA's Office *independently* determined that the shooting was unjustified strongly suggests that the DA's Office's subsequent decision to file charges was also an independent decision based on the DA's Office's prior findings as to the unjustified nature of the shooting.

Plaintiff has asserted that Greco was part of a panel that considered bringing charges against Plaintiff, and that this alleged role establishes the necessary link between Defendants and the DA's Office's decision to file charges against Plaintiff. The record shows that on April 10, 2014, Nakamura invited Greco, Dowland and Christenson to attend a meeting to determine what and who to charge in the Willard shooting. However, prior to the scheduled meeting, the City determined that West Valley City would not participate in the meeting.[14] Plaintiff asserts that the City subsequently reversed its practice and a later meeting occurred where Greco participated in the final review and charging decision. Pl.'s Facts ¶ 50. However, this fact is not borne out by the record before the Court. Viewing the evidence in the light most favorable to Plaintiff, Greco was part of a panel of police officers who met with the DA's Office in October 2013, about six months before the April 15, 2014 meeting to determine what and who to charge in the Willard shooting and about eight months before the DA's Office filed charges against Plaintiff. *See* Nakamura Deposition (ECF No. 86-27) at 73:1-19. The panel, including Greco, recommended filing criminal charges. Nakamura Deposition (ECF No. 104-13) at 42:2-43:8. The Court finds this evidence to be too vague and remote in time for Plaintiff's claim of retaliatory prosecution to survive summary judgment. Even if Greco recommended in October 2013 that the DA's Office file criminal charges against Plaintiff, the record shows that as of April 2014, the DA's Office still had not determined what and who to charge, and held a meeting (without the City present) to

---

[14] Plaintiff insinuates that Christenson may still have participated in the meeting as he was not specifically listed in the email regarding having the City's employees not attend the meeting. However, Plaintiff has provided no admissible evidence to establish or suggest this fact, and speculation about what could have happened is not sufficient to defeat summary judgment. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) ("In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.").

discuss this decision. Plaintiff has provided no other factual disputes that would show that Greco urged or induced the DA's Office to bring criminal charges against Plaintiff, and cannot survive summary judgment based on speculative assertions that Greco was more involved in the decision than the record suggests. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

To establish municipal liability against the City, Plaintiff also has the burden to show that the damage was caused by action taken pursuant to an official municipal policy or under a decision by a municipal policymaker. *See Monell v. Dept. of Social Servs.*, 436 U.S. 658 (1978). However, Plaintiff admits that he "lacks direct evidence to establish this municipal practice." Opp'n at 47. "In a response to a motion for summary judgment, a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988). Plaintiff argues that "the indirect evidence suggests involvement by WVC policy makers, either Pyle or Russo," but Plaintiff cites nothing to support such a claim and such speculation cannot defeat summary judgment. *See id.*

### B. The Alleged Retaliation Was Not Substantially Motivated as a Response to Plaintiff's Exercise of His First Amendment Rights.

Even if Plaintiff could show that Greco urged or induced the DA's Office to file charges against Plaintiff, he has provided no evidence that Greco acted in retaliation for Plaintiff's exercise of his First Amendment rights.[15] On March 4, 2013, the City conducted an IA interview with Plaintiff where Plaintiff disclosed systematic misconduct within the NNU. Plaintiff asserts

---

[15] In his amended complaint, Plaintiff asserted a First Amendment retaliation claim based on his alleged right to associate with the City and his right to free speech. However, Plaintiff did not address his right to associate as a basis for his retaliatory prosecution claim in his opposition memorandum or at the hearing, and the Court finds that that basis has been abandoned.

that Defendants retaliated against him because he disclosed this systematic misconduct, which brought negative publicity and harm to the City.

In briefing, Plaintiff relied solely on the lack of probable cause for his prosecution to establish retaliatory intent on the part of the City. However, under *Hartman v. Moore*, 547 U.S. 250 (2006), lack of probable cause is not sufficient. As the Court stated:

> *a retaliatory motive on the part of an official urging prosecution combined with an absence of probable cause* supporting the prosecutor's decision to go forward are reasonable grounds to suspend the presumption of regularity behind the charging decision, and enough for a prima facie inference that the unconstitutionally motivated inducement infected the prosecutor's decision to bring the charge.

*Id.* at 265 (emphasis added) (internal citation omitted). As *Hartman* makes clear, a plaintiff must show *both* "retaliatory motive on the part of the official urging prosecution" and lack of probable cause to infer retaliatory motive from the prosecutor. *Hartman* does not allow Plaintiff to bypass the retaliatory motive element of the official.

Plaintiff has not established his burden to show sufficient evidence of retaliatory intent on the part of Defendants to survive summary judgment. Plaintiff's retaliatory prosecution is based on Greco's actions in signing the Information when he believed the shooting was justified. Accordingly, Plaintiff must show that Greco had a retaliatory motive when he acted. Plaintiff concedes that he has no evidence that Greco was aware of Plaintiff's protected speech. *See* Opp'n 39-40. Plaintiff has also provided no evidence that Greco was not personally motivated by a desire to retaliate against Plaintiff for his speech. *See id.*

Plaintiff tries to make the necessary link to retaliatory motive by arguing that Greco acted under the instructions of the City. Opp'n at 39-40. While other Circuits have recognized that retaliatory motive can come from a supervisor, the Plaintiff is still required to show that "*the*

*superior intended to retaliate* but only that the subordinate knowingly participated in the acts of

the superior." *King v. Zamiara*, 680 F.3d 686, 696 (6th Cir. 2012) (emphasis added). Therefore,

under Plaintiff's theory of the case, he would be required to show that *the City intended to

retaliate* against Plaintiff when it offered Greco to sign the Information. The record is devoid of

evidence that the City offered (or ordered) Greco to sign the Information *in retaliation* for

Plaintiff's alleged protected speech and speculation as to potential retaliatory motive is not

sufficient to defeat summary judgment. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir.

1988).

### C. The District Attorney's Office Would Have Filed Criminal Charges Regardless of Any Urging by Defendants.

Plaintiff has the burden to show that Defendants "induced the prosecutor to bring charges

that would not have been initiated without his urging." *Hartman v. Moore*, 547 U.S. 250, 262

(2006). Plaintiff has provided no evidence that the DA's Office would not have filed charges

even if Greco had not signed the Information.

Plaintiff has admitted that the DA's Office could have gotten Detective Kotrodimos from

the Salt Lake County Police Department to sign the probable cause statement.[16] It was

Kotrodimos' opinion, which figured prominently in the Information, that Plaintiff's "actions

contradicted police use of force standards and that he was not in a justifiable position where the

threat of death or serious bodily injury was imminent to himself or others," or in other words,

that Plaintiff "acted recklessly when compared to typical training and performance standards."

---

[16] The record also suggests that Dowland could have signed the Information, as Nakamura asked
for either Greco or Dowland to sign it. While the availability of Dowland would not necessarily
absolve the City of liability, it does absolve Greco of liability as it cannot be disputed that
charges still would have been brought without Greco's involvement.

Information (ECF No. 86-30) at 4.

Beyond Kotrodimos, Plaintiff has failed to raise a fact issue that others could have signed the Information. Plaintiff speculates that the DA was having issues finding someone to sign the Information, but the record shows only that others (principally Knighton) were not offered the chance to sign the Information, not that they refused to sign it. *See* Opp'n at 46. Assumption and speculation are insufficient to defeat summary judgment. *See Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion for Partial Summary Judgment.

DATED this 12th day of March, 2018.

BY THE COURT:

Bruce S. Jenkins
United States District Judge